IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UPPER POTTSGROVE TOWNSHIP          :          CIVIL ACTION
                                   :
          v.                       :
                                   :
INTERNATIONAL FIDELITY             :
INSURANCE CO.                      :          NO. 13-1758


MEMORANDUM

Dalzell, J.                                        October 2, 2013

          We consider defendant International Fidelity Insurance

Co.'s ("IFIC") motion to dismiss Count IV of plaintiff Upper

Pottsgrove Township's ("the Township") complaint.  For the

reasons discussed herein, we will grant IFIC's motion.

          This dispute arises out of construction related to

Coddington View - Phase 2, a real estate development in Upper

Pottsgrove Township, Pennsylvania[1].  As we will describe at more

length below, the Township engaged TH Properties, L.P. ("THP")

to complete public improvements for the development, and IFIC

issued the subdivision bonds the Township obliged THP to post in

order to ensure the Township's financial security.

---

[1] Though the Complaint includes claims related to the
bond for Phase 1 of the development, the Township avers that
"the parties resolved all claims concerning the Phase I bond",
Pl. Resp. in Opp. at 1 n.1 -- a contention IFIC does not
dispute.

Before completing the project, THP filed for bankruptcy and the Township demanded that IFIC pay it the current principal balances on the bonds IFIC had issued.  IFIC did not pay the Township the principal balances of those bonds, and the Township sued IFIC in the Montgomery County Court of Common Pleas.  IFIC timely removed.  We exercise jurisdiction pursuant to 28 U.S.C. § 1332[2].

The Township's Complaint includes four counts: a request for a declaratory judgment; a breach of contract claim; a request for specific performance as well as equitable and injunctive relief; and a claim of statutory bad faith pursuant to 42 Pa. Cons. Stat. Ann. § 8371.  IFIC moves to dismiss this fourth claim on the ground that a cause of action under § 8371 is not cognizable against a surety.

## I. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a defendant may move the Court to dismiss a complaint on the ground that it fails to "state a claim upon which relief can be granted".  A moving defendant bears the burden of proving that the plaintiff has

---

[2] The parties are diverse -- the plaintiff is a Pennsylvania township and the defendant is a citizen of New Jersey -- and the amount in controversy exceeds $75,000, see Complaint, Not. Rem. Ex. D.

failed to state a claim for relief, <u>see</u> Fed. R. Civ. P. 12(b)(6), <u>see also</u> <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005).

As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), in order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'", <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", <u>Iqbal</u>, 556 U.S. at 678.

As our Court of Appeals has explained post-<u>Twombly</u> and <u>Iqbal</u>, when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the district courts must engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated.  The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).
We thus begin by reciting the facts as the Township has pled
them.

## II. **Facts**

On September 18, 2006 the Township and THP entered
into a Subdivision and Land Development Agreement (Phase 2 -
Coddington View) and a Subdivision Financial Security Agreement
by which THP agreed to complete certain public improvements for
Coddington View - Phase 2.  Comp. ¶ 8.  Pursuant to the
Subdivision Financial Security Agreement, THP was required to
set aside $2,480,762.52 with Willow Grove Bank.  Id. at ¶ 9.
After THP had completed some of the improvements, on February
19, 2008 THP and the Township entered into a new subdivision
financial security agreement -- an Addendum to the
Subdivision/Land Development Financial Security Agreement --
allowing THP to substitute a bond for the money it had set
aside.  Id. at ¶ 10.

On or about January 23, 2008, the bond substitution
occurred and IFIC issued that bond in the amount of $813,488.95[3].
Id. at ¶ 11; see also Subdivision Bond, Comp. Ex. G.  The

_____

[3] The Complaint lists this amount as $813,488.954.  We
will round down.

4

Township avers that "[a]fter reductions based on the completion of some improvements, the current balance of the Phase II Bond is $614,742.06."  Comp. ¶ 12.

The bond lists THP as Principal, IFIC as Surety, and the Township as Obligee, and it provides,

> THE CONDITION OF THIS OBLIGATION IS SUCH, that if the said Principal shall construct, or have constructed, the improvements herein described, and shall save the Obligee harmless from any loss, cost or damage by reason of its failure to complete said work, then this obligation shall be null and void, otherwise to remain in full force and effect, and the Surety, upon receipt of a resolution of the Obligee indicating that the improvements have not been installed or completed, will complete the improvements or pay to the Obligee such amount up to the Principal amount of this bond which will allow the Obligee to complete the improvements.

Subdivision Bond, Comp. Ex. G.

On April 30, 2009 THP filed for bankruptcy under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, et seq., and it stopped work on the subdivision.  Comp. at ¶ 13.  On May 16, 2011 the Township demanded that IFIC pay the Township the current principal balance on the bonds.[4]  Id. at ¶ 14.

According to the Complaint, "IFIC has unlawfully refused to complete the improvements or pay the Township the

balance of the Bonds so that the unfinished improvements at
Phase I and Phase II can be completed." Id. at ¶ 15. As a
result, "[t]he conditions of Phase I and Phase II have
deteriorated over time, and will continue to deteriorate" and
"[t]he cost to complete the improvements increases as the
unimproved real estate continues to deteriorate." Id. at ¶¶ 16-
17. Moreover, the Township avers that "the unimproved real
estate creates a dangerous condition in the Township,
jeopardizing the health and safety of residents and others."
Id. at ¶ 18.

## III.  Discussion

According to IFIC, "Count IV of UPT's Complaint fails
to state a claim upon which relief can be granted because
Pennsylvania's 'bad faith' insurance statute, 42 Pa.C.S.A. §
8371, is not applicable to sureties or surety bonds." MTD at 5.
IFIC observes that § 8371 provides that "[i]n an action arising
under an insurance policy, if the court finds that the insurer
has acted in bad faith toward the insured, the court may" award
damages, and further contends that "[a] surety bond . . . is
simply not an 'insurance policy'". Id. In support, IFIC points
to the plain language of § 8371, caselaw from district courts in

---

⁴ As we noted above, we consider here only the

our Circuit and from the courts of the Commonwealth, and their inferences about the legislative history of § 8371.  We will discuss these arguments at more length below.

The Township opposes the motion, contending that IFIC's failure to pay is "precisely the type of behavior that, 42 Pa.C.S.A. § 8371 (the 'Bad Faith Statute'), is designed to prevent", Pl. Resp. in Opp. 1-2, and that the contrast IFIC draws between an insurance policy and a surety bond is a "distinction . . . without a difference".  Id. at 4.

As a federal court sitting in diversity, we apply Pennsylvania law -- here, § 8371.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  As IFIC points out, "[t]here are no published decisions from the Pennsylvania Supreme Court, the Pennsylvania Superior Court, or the Third Circuit that have addressed the issue of whether a surety bond may be considered an 'insurance policy' for purposes of § 8371."  MTD at 5.  See also, e.g., Intercon Constr., Inc. v. Williamsport Mun. Water Auth., No. 4:07-1360, 2008 WL 239554, at *2 (M.D. Pa. Jan. 28, 2008) ("there does not appear to be any Third Circuit, Pennsylvania Supreme Court, or Pennsylvania Superior Court case law on the issue" of whether a surety may be liable under § 8371).

---

Township's claim for the principal balance on the Phase 2 bond.

Where there are no published decisions by the Pennsylvania Supreme Court on a question of state law, "the duty of the district judge under the Erie doctrine [is] to predict how the Pennsylvania Supreme Court would interpret the [statutory] requirements . . . if th[e] case were before it." Nationwide Ins. Co. v. Resseguie, 980 F.2d 226, 229 (3d Cir. 1992).  We are aided in making this "Erie guess"[5] by Pennsylvania caselaw on sureties in general and by cases within our Circuit and one unpublished opinion by the Pennsylvania Superior Court considering this issue in particular.

We note at the outset of our consideration of § 8371 that the Township cites an earlier case of ours, Turner Constr. Co. v. First Indem. of America Ins. Co., 829 F. Supp. 752 (E.D. Pa. 1993) as standing for the proposition that "[c]ourts have extended this [Bad Faith S]tatute to actions against sureties for failure to honor performance bonds", Pl. Resp. in Opp. at 5 (quoting Reading Tube Corp. v. Employers Ins., 944 F. Supp. 398, 403 (E.D. Pa. 1996)) (Joyner, J.).  Turner Construction does not go this far.  In Turner Construction we found that the facts did

_____

[5] See Dolores K. Sloviter, A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism, 78 Va. L. Rev. 1671, 1679 (1992). As Judge Sloviter noted in this article, these "Erie guesses" have proved perilous for her Court, id. at 1679-81 (collecting cases in which the Court of Appeals for the Third Circuit has "guessed wrong").

not support a bad faith claim against a surety under § 8371.
See id. at 763-64.  No party argued that § 8371 did not apply to
a surety, and so we did not consider the question.  The parties
also failed to raise this issue in Reading Tube.  IFIC now
squarely presents the question of § 8371's applicability to
sureties, and we will therefore consider it for the first time
here.

The parties have identified several district court
cases in our Circuit as well as Pennsylvania state court cases
that have addressed the issue.  Since Reading Tube, all cases
the parties cite have concluded that the bad faith provisions of
§ 8371 do not apply to sureties.  Though those cases are not
binding on our determination, see Threadgill v. Armstrong World
Industries, Inc., 928 F.2d 1366, 1371 (3d Cir. 1991), we will
consider them as we analyze § 8371 here.

In determining the meaning of § 8371 we begin with the
language of the statute.  See, e.g., Araujo v. New Jersey
Transit Rail Operations, Inc., 708 F.3d 152, 158 (3d Cir. 2013);
American Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982).  We
assume "that the legislative purpose is expressed by the
ordinary meaning of the words used", American Tobacco Co., 456
U.S. at 68, and so if the meaning of the statutory language is

9

unambiguous, the judicial inquiry is complete.  See, e.g.,

Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992).

Section 8371, "Actions on Insurance Policies",

provides,

> In an action arising under an insurance
> policy, if the court finds that the insurer
> has acted in bad faith toward the insured,
> the court may take all of the following
> actions:
>
> (1) Award interest on the amount of the
> claim from the date the claim was made by
> the insured in an amount equal to the prime
> rate of interest plus 3%.
>
> (2) Award punitive damages against the
> insurer.
>
> (3) Assess court costs and attorney fees
> against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.

The statute does not define the term "insurance

policy", but courts have repeatedly found that the statutory

language of § 8371 is unambiguous.  See, e.g., Boring v. Erie

Ins. Group, 641 A.2d 1189, 1192 (Pa. Super. 1994) ("We begin by

observing that the words of 42 Pa.C.S. § 8371 are unambiguous:

the statute states that it applies '[i]n an action arising under

**an insurance policy.**'") (emphasis in original); Pullman Power

Products Corp. v. Fidelity and Guar. Ins. Co., No. 96-636, 1997

WL 33425288, at *4 (W.D. Pa. Feb. 21, 1997) ("Section 8371 is

plain and unambiguous on its face in that it applies to insurance policies only").

It begs the question, however, to say that the statute is unambiguous because it applies to insurance contracts.  The real inquiry before us is whether under § 8371 "insurance contracts" includes surety contracts.  In order to evaluate this question, we will consider the relationship between sureties and insurance contracts.

Commentators have explained the distinction between surety bonds and insurance policies: while an insurance policy is "an agreement by which one undertakes for consideration to pay money for another on the death, destruction, loss, or injury of someone or something", a surety bond is a contract "to answer for the debt, default, or miscarriage of another and . . . creates a tripartite relationship between the party secured, the principal obligor, and the surety", 74 Am. Jur. 2d <u>Suretyship</u> § 253 (1974).

The Pennsylvania Supreme Court has similarly observed that "there exist fundamental differences between bilateral contracts of insurance and tripartite surety bond agreements", and it upheld the Commonwealth Court's finding that "the differences between their respective premium calculations, payments, and terms and conditions of cancellation and renewal,

support 'the conclusion that the surety bonds are in the nature of commercial guarantee instruments rather than policies of insurance'", Foster v. Mut. Fire, Marine and Inland Ins. Co., 614 A.2d 1086, 1099 (Pa. 1992) (quoting Grode v. Mut. Fire, Marine and Inland Ins. Co., 572 A.2d 798, 806 (Pa. Cmwlth. 1990)).  In upholding the lower court's finding, the Pennsylvania Supreme Court noted that the Commonwealth Court relied on the United States Supreme Court's recitation of "the usual view, grounded in commercial practice, that suretyship is not insurance", Foster, 614 A.2d at 1099 (quoting Pearlman v. Reliance Ins. Co., 371 U.S. 132, 140 n.19 (1962)).

Other courts in our Circuit have recognized this distinction.  See, e.g., Pullman Power, 1997 WL 33425288, at * 3; Intercon Constr., Inc., 2008 WL 239554, at * 3.  As Judge Giles explained in Superior Precast, Inc. v. Safeco Ins. Co. of America, 71 F. Supp. 2d 438 (E.D. Pa. 1999),

> Central to th[e] difference [between suretyships and insurance contracts] is consideration of the relationships among the parties to the different contracts.  An insurer and its insured share a direct contractual relationship and the understanding of that relationship is that the insurer will compensate the insured for loss or damage upon proper proof of claim and without resort to litigation.  Special damages for bad faith conduct within that relationship are consistent with such a direct relationship.  But a surety . . . and

12

>     a protected party . . . share no such direct
>     contractual relationship . . . .

Id. at 451-52.  Based on this distinction the Pennsylvania

Superior Court, in an unpublished Memorandum Opinion, found that

a surety contract is not an "insurance policy" within the

meaning of § 8371.  Eastern Steel Constructors, Inc. v. St. Paul

Mercury Ins. Co., Nos. 972, 973, 989, 1003 WDA 2001 (Pa. Super.

Aug. 2, 2002), MTD Ex. A.

     The Township tries to distinguish this case from

others where courts have found that surety bonds are not

insurance contracts.  Its theory is that here the Township was

named as an obligee and so IFIC had a specific obligation to the

Township that sureties in other cases did not have.  See Pl.

Resp. in Opp. at 6.  The Township argues that "IFIC and the

Township share the 'direct contractual relationship' that was

absent in Superior Precast", and it notes that "[t]he Township

is specifically identified as the 'Obligee' under the IFIC Bond

issued to the Township to insure the completion of the

improvements."  Id.

     But this argument fails.  The surety bond IFIC issued

reflects a garden variety relationship between a surety, a

principal, and an obligee.  The contractual language differs

from the language in Superior Precast, but it nevertheless

embodies the traditional, tripartite relationship.  See, e.g., Pullman Power, 1997 WL 33425288, at * 1 (Pullman had no cause of action under § 8371 against surety even though contract named Pullman as an obligee); Allegheny Valley Joint Sewage Auth. v. The American Ins. Co., No. 94-2105, 1995 WL 1944748 (W.D. Pa. Aug. 17, 1995) (same).  Treatise authors, the Pennsylvania Supreme Court, and the United States Supreme Court have routinely found that such a relationship does not constitute an insurance contract, and their findings bear on our analysis here.  Under this approach a surety bond is not an insurance contract, and the bad faith provision of § 8371 would thus not apply to sureties.

The Township argues that the Unfair Insurance Practices Act ("UIPA") complicates the picture.  The UIPA defines "insurance policy" as "any contract of insurance, indemnity, health care, suretyship, title insurance, or annuity issued, proposed for issuance or intended for issuance by any person", 40 P.S. § 1171.3 (emphasis added), and the Township argues that we here should interpret the meaning of "insurance policy" in this context in light of this definition.  Pl. Resp. in Opp. at 4.

14

The differences in the remedial schemes of the UIPA and § 8371 -- and well-established canons of statutory construction -- lead us to reject this argument.

The UIPA differs from § 8371 in that it was designed "to prevent and regulate violations systemic in the insurance industry, as only violations committed 'with a frequency [as to indicate a] business practice' are sanctionable", Oehlmann v. Metropolitan Life Ins. Co., 644 F. Supp. 2d 521, 531 (M.D. Pa. 2007) (quoting 40 P.S. § 1171.5).  The UIPA does not create a private right of action but instead allows the Insurance Commissioner to regulate bad faith claims.  See, e.g., D'Ambrosio v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 431 A.2d 966, 970 (Pa. 1981); Wright v. North Am. Life Assurance Co., 539 A.2d 434, 438 (Pa. 1988) ("[T]he provisions of this statute were not intended to confer a right of private action.  Rather, the Unfair Insurance Practices Act vests enforcement powers in the Pennsylvania Insurance Commissioner").

By contrast, Section 8371 is a distinct Act that creates a private right of action.  Given the difference in the Acts' remedial schemes, we need not infer that the General Assembly intended these divergent penalties to apply to identical actors.  Had that body so intended, it could have expressed this aim explicitly -- as Pullman Power reasoned:

15

"[i]f it were the legislature's intent to create a private cause of action for bad faith claims encompassing all of the instruments covered by the UIPA, it could have amended the UIPA or included in Section 8371 a definition of insurance policy as expansive as that in the UIPA."  Pullman Power, 1997 WL 33425288, at * 4.

Demanding a more explicit statement before applying one Act's definitions to another Act is consistent with the canon of statutory interpretation whereby "when a definition is present in one legislative act, but absent in a later act, the court should assume that the omission was intended by the legislature."  Id. (citing Creighan v. Firemen's Relief & Pension Fund Bd., 155 A.2d 844 (Pa. 1959)).

For these reasons, courts have routinely rejected the invitation to read § 8371 as conferring a right of action against a surety based on the UIPA's definition of "insurance agreement."  See, e.g., Allegheny Valley, 1995 WL 1944748, at * 3 ("[T]he legislature did not enact §8371 as part of the UIPA, and . . . the definitions contained therein are inapposite and irrelevant here"); Pullman Power, 1997 WL 33425288, at * 4; Superior Precast, Inc. v. Safeco Ins. Co. of America, 71 F. Supp. 2d at 454 ("The General Assembly provided in the UIPA a special, broad definition of insurance policy . . . but left the

16

term undefined in § 8371.  This court will presume that omission
was intentional and that the broader definition of insurance
policy is limited to the UIPA only.").

The Township next points us to decisions of courts in
other states that hold "sureties should be exposed to bad faith
claims in their hand[l]ing of bond claims", Pl. Resp. in Opp. at
9.  Our role as a federal court sitting in diversity is not to
canvass the views of the courts of various states and then reach
our own conclusion as to what would be the best possible legal
regime.  Instead, we have the more mundane duty of considering
the law of the courts of Pennsylvania, informed if necessary by
our sister Pennsylvania district courts' predictions regarding
that law, and seek to predict Pennsylvania law as the
Pennsylvania Supreme Court would apply it.

## IV. <u>Conclusion</u>

Our analysis leads us to conclude that surety bonds
are not insurance contracts within the meaning of § 8371.  As a
matter of law the Township cannot sustain its claim in Count IV.
IFIC has thus met its burden of showing that the Township does
not have "plausible claim for relief" and we will grant the
motion to dismiss.                          BY THE COURT:

                                    <u>/S/ STEWART DALZELL, J.</u>

17